**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CLOVER STAFFING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-1251 |
| | § | |
| JOHNSON CONTROLS WORLD | § | |
| SERVICES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER ON CLOVER'S MOTION TO COMPEL**

Defendant, Johnson Controls World Services, Inc., asserted claims of attorney-client privilege and work-product protection as to four documents. Plaintiff, Clover Staffing, L.L.C., moved to compel production of these documents. (Docket Entry No. 102). JCI submitted the documents for *in camera* inspection and submitted two declarations in support of its privilege and protection claims. (Docket Entry No. 114). Clover moved to strike the first declaration JCI submitted, (Docket Entry No. 101), and JCI responded, (Docket Entry No. 115).

The documents at issue fall into two categories. The first category is part of a 45-page Powerpoint presentation that was based on notes from a July 30, 2002 meeting.[1] The second

---

[1]     JCI-PR-115-136, Powerpoint presentation.

category consists of three documents: an email dated November 27, 2002 and three documents setting out financial analysis relating to Clover generated by JCI in 2003.[2]

Based on a careful review of the motions and responses, the documents submitted *in camera*, the record, and the applicable law, this court grants the motion to compel as to one document (the Powerpoint presentation, JCI-PR-115-136) and otherwise denies it.   The reasons are explained below.

## I.      The Applicable Law

In civil cases in which state law supplies the rule of decision, privilege is determined in accordance with that state's law.   *See* FED. R. EVID. 501.   The parties agree that Texas law governs the attorney-client privilege claim and federal law determines the work-product protection claim.   (Docket Entry No. 103 at 14, 17; Docket Entry No. 114 at 4).

### A.      Attorney-Client Privilege

To be protected by the attorney-client privilege, a communication must be confidential and between qualified persons.   *See* TEX. R. EVID. 503(b).[3]   Qualified persons include the

---

[2]        JCI-PR-00280, November 27, 2002 email from John Murphy to Stephen Herbst; JCI-PR-011901, JCI analysis of Clover Payments, Inception to 4/18/03; JCI-PR-011902-3, JCI–BP Account Clover Buyout Analysis, July 25, 2003.

[3]        The relevant Texas Evidence Rule provides:

> (1) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
> (A) between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
> (B) between the lawyer and the lawyer's representative;
> (C) by the client or a representative of the client, or the client's lawyer or a

attorney, the client, and their representatives. *Id*. "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Tex. R. Evid. 503(a)(5). A corporation's communication is privileged if "the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 225 at n.3 (Tex. 2004).

There is no presumption under Texas law that documents are privileged; the party asserting privilege must demonstrate its application. *Id.* at 225–26; *see also In re Monsanto Co.*, 998 S.W.2d 917, 925 (Tex. App—Waco 1999, orig. proceeding). "The documents themselves may constitute sufficient evidence to make a prima facie showing of attorney-client or work product privilege." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 223. "[A]n affidavit, even if it addresses groups of documents rather than each document

---

representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;
(D) between representatives of the client or between the client and a representative of the client; or
(E) among lawyers and their representatives representing the same client.

Tex. R. Evid. 503(b)(1).

individually, has been held to be sufficient to make a prima facie showing of attorney-client and/or work product privilege." *Id.*

### B.    Work-Product Protection

To qualify for work-product protection, a document must be created in anticipation of litigation by a party or his agent.[4]   "'In anticipation of litigation' means that the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Smith v. Texaco, Inc.*, 186 F.R.D. 354, 357 (E.D. Tex.1999).  "Litigation need not necessarily be imminent to protect documents prepared by attorneys in anticipation thereof to be within the work product doctrine, as long as the primary motivating purpose behind creation of the document was to aid in possible future litigation."  *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 670 (S.D. Tex.1990).   Documents created for a business purpose are not covered by the work-product protection.  *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex.2004) (documents created for a business purpose are not protected even though the "information developed . . . may be helpful in legal proceedings"); *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) ("The

---

[4]      Rule 26(b)(3) of the Federal Rules of Civil Procedure provides:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

FED. R. CIV. P. 26(b)(3).

4

law of our circuit is that the privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'") (citing *United States v. El Paso Co.,* 682 F.2d 530, 542 (5th Cir.1982)).

## II.    Analysis

### A.    The Powerpoint

The parties have submitted a declaration of Stephen Herbst, a vice-president of Johnson Controls World Services, a JCI subsidiary.  The declaration describes the creation of the Powerpoint.  (Docket Entry No. 114, Exs. A-1, A-2).  Clover has moved to strike this declaration, asserting that it is inconsistent with Herbst's earlier deposition testimony and with the testimony of other witnesses.

Herbst stated in his declaration that the Powerpoint was generated based on notes taken at a July 30, 2002 meeting that he called to review the JCI/BP contract.  In his declaration, Herbst stated that on July 30, 2002, he was aware that there had been friction between Clover and JCI's Houston office and that Clover had been "expressing its dissatisfaction" with JCI over the records-management business.  Herbst also stated that it was "probable" he had received a copy of a letter from a lawyer representing Clover (dated July 10, 2002); that he knew that Clover was "saber rattling"; and that Mark Sutton at Clover had previously threatened to sue or had sued BP over a legal dispute with that company.  (Docket Entry No. 114, Ex. A).  Clover points to Herbst's earlier deposition testimony that  he did not know of "defaults" by Clover and did not know about any JCI effort  to terminate the Clover contract over a records-management dispute (the dispute that sparked the July 10, 2002 letter

5

from counsel).  Clover also points to deposition testimony by Cam Nerdahl, JCI's director of

the BP Houston account, in which Nerdahl stated that he viewed the records-management

dispute as a business rather than a legal problem and that he was not working through the

legal department but rather attempting to resolve the matter on a business basis.  Clover asks

this court to strike Herbst's declaration.  (Docket Entry No. 101).

Clover relies on cases that have allowed district courts considering a summary-

judgment motion to disregard a nonmovant's affidavit that contradicts, without explanation,

previous deposition testimony.  *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th

Cir. 1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n. 23 (5th Cir. 1992).  These

authorities are primarily based on the need to preserve the usefulness of Rule 56.  "'[I]f a

party who has been examined at length on deposition could raise an issue of fact simply by

submitting an affidavit contradicting his own prior testimony, this would greatly diminish the

utility of summary judgment as a procedure for screening out sham issues of fact.'"  *Kennedy

v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (quoting *Foster v. Arcata Assocs.*,

772 F.2d 1453, 1462 (9th Cir. 1985)).  "When a party has given clear answers to unambiguous

questions which negate the existence of any genuine issue of material fact, that party cannot

thereafter create such an issue with an affidavit that merely contradicts, without explanation,

previously given clear testimony."  *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75

F.3d 1162, 1168-72 (7th Cir. 1995) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus.,

Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)).  "If [courts] allowed a party to create a genuine

issue of material fact by changing his prior testimony: 'the very purpose of the summary

judgment motion–to weed out unfounded claims, specious denials, and sham defenses–would be severely undercut." *Id.* (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985)); *see also Allied Signal*, 75 F.3d at 1168-69.  At the same time, courts are careful to distinguish between "discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Allied Signal*, 75 F.3d at 1169-70.

Clover has not cited cases that apply the rule permitting a district judge to disregard a witnesses's affidavit or declaration inconsistent with that same witnesses's prior deposition or other sworn statement to the privilege-determination context, as opposed to the summary-judgment decision context.  Nor has Clover cited cases that apply the rule to inconsistencies between the declarant and other witnesses.

A careful review of the asserted discrepancies between Herbst's deposition testimony and his declaration does not reveal unexplained inconsistencies that would permit this court to disregard or strike the declaration.  In his declaration, Herbst stated that on July 20, 2002, he was aware of friction between Clover and JCI's Houston office and that Clover was dissatisfied with JCI.  Herbst also stated that it was "probable" he had received a copy of a letter from a Clover lawyer (not that he saw or attended to the letter) and that he was aware from discussions with Nerdahl that Clover had been threatening to pursue legal action if JCI did not agree to the demand for the records-management business.  These statements do not contradict Herbst's testimony in his deposition that he did not recall hearing that Clover was in "default" but did recall knowing that Nerdahl had concerns about Clover's actions with

7

respect to the records-management work.  (Docket Entry No. 114, Ex. A at 2).  In his deposition, Herbst stated that he was aware of a dispute about records, but did not recall the exact terms.  (Docket Entry No. 115, Ex. A at 151–52).  Herbst stated that he was aware that Clover had expressed dissatisfaction with JCI and threatened to pursue legal action if certain business agreements were not reached.  (Docket Entry No. 101; Docket Entry No. 114, Ex. A at 2).  This testimony is not so inconsistent with Herbst's later declaration as to require this court to disregard it.  The motion to strike the declaration is denied.  (Docket Entry No. 101).

The Powerpoint was made from notes taken during a July 30, 2002 meeting.  The meeting was called to review the overall contract relationship between JCI and BP; the JCI/Clover contract was only one of the issues discussed.  Those attending the meeting included Herbst, Nerdahl, and Duane Weber, the JCI director of strategic procurement. Others also attended, but their names and titles are not provided.  Instead, they are described generally as JCI "business people" and managers "with authority to obtain and act up legal advice."  (Docket Entry No. 114 at 3).  No attorneys attended the meeting.  There is no indication that, after the meeting, anyone but possibly Herbst sought legal advice on any issue relating to the topics discussed at the meeting.

JCI asserts that the Powerpoint is privileged because it recorded notes of communications among a client's managers to facilitate the rendition of legal advice.  Clover asserts that the Powerpoint is not privileged because it was created for a business purpose.

There are several problems with JCI's privilege assertion, even considering Herbst's declaration.  JCI is correct that under Texas law, a communication may be privileged even if

8

it is not made to an attorney, as long as it is made by qualified persons for the purpose of facilitating the rendition of legal advice.  Under Texas law, the privilege also applies to "representatives of the client."  *See* TEX. R. EVID. 503(b)(1)(D).  A "representative" is any person:  (1) who has authority to obtain professional legal services on behalf of the client; (2) who has authority to act on legal advice rendered to the client; or (3) who makes or receives a confidential communication while acting within the scope of the client's employment for the purpose of effectuating legal representation for the client.  TEX. R. EVID. 503(a)(2)(A)-(B); *Siebu Corp. v. KPMG, L.L.P.*, 2002 WL 87461 (N.D. Tex. Jan. 18, 2002).  Whether those attending the July 30, 2002 meeting were all "representatives" under Rule 503 depends on whether they made or received a confidential communication while acting within the scope of their employment for the purpose of facilitating the rendition of legal advice for JCI.

This court's *in camera* review of the Powerpoint slides at issue does not show that the communication was to facilitate obtaining legal advice.  JCI asserts that the discussion about Clover was about exploring options to consider if Clover pursued litigation against JCI.  The Powerpoint slides state that the options discussed on the critical slide, JCI-PR-101-135, were actions to consider "if no change" with respect to the matters being discussed and the "negatives" that were identified.  (JCI-PR-001-134) ("What are the options if no change?").

On the two "Actions" slides, one of which is the JC-PR-001135, the slide Clover is most anxious to obtain and JCI most anxious to protect, there is no mention of any anticipated litigation.  Indeed, only one of the thirteen bullet points even refers to lawyers.  The phrase "Bury them with lawyers," appears in a bullet point under the subheading, "Disembowel

Clover."  Three other items are listed with "Bury them with lawyers": "Encourage attrition,"

"Pick at margins," and "No more service transfer."   These are clearly a list of business

strategies.  Looking at the Powerpoint as a whole and the Clover-related slides in particular

makes it clear that these slides do not refer to options to consider in the event anticipated

litigation with Clover occurred.  Rather, the slides discuss options if there was "no change"

in the business situation.  The options discussed were business options to be implemented "if

no change," not legal strategies  to be pursued if litigation occurred.  This view is consistent

with Herbst's declaration and deposition testimony, which make it clear that while he knew

there were problems in the JCI/Clover relationship, both he and Nerdahl viewed them

primarily as business rather than legal or litigation problems.

Although it is not essential that communications be given to a lawyer to qualify as

privileged, the fact that they are provided to a lawyer can support the application of the

privilege.  In this case, Herbst does not state that the discussion recorded in the Powerpoint

was in fact communicated to the legal department at JCI.  Rather, he states that after "further

thinking and reflection on my part, and consultation with the Legal Department, we did not

adopt any of the strategies" discussed at the July 30, 2002  meeting but decided to honor the

"letter of the Subcontract."  (Docket Entry No. 114, Ex. A at 4).  Herbst does not state that he

used the Powerpoint or its contents in consulting with lawyers or even that he specifically

sought legal advice about whether to adopt the business strategies discussed.  Instead, he

merely says that he gave the situation thought, that he consulted with the Legal Department,

and that JCI did not adopt any of the strategies discussed at the July 30, 2002 meeting.

10

Herbst's declaration does not show that the Powerpoint slides discussing Clover were communications made for the purpose of obtaining legal advice, as opposed to communications about possible business solutions to business problems.

Nor does the Powerpoint qualify for work-product protection. The contents of the slides make clear that they were not created primarily to "aid in possible future litigation," *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 670 (S.D. Tex. 1990), but for a business purpose and are not covered by the work-product protection. *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex.2004) (documents created for a business purpose are not protected even though the "information developed . . . may be helpful in legal proceedings").

Clover's motion to compel production of the Powerpoint is granted.

## B.    The Remaining Documents

JCI asserts privilege and protection as to three other documents. JCI has submitted a supplemental declaration by Herbst to support this assertion.[5]  (Docket Entry No. 117). The documents have been submitted for *in camera* review.

The first document is a November 2002 email from John Murphy, vice-president of JCI and general manager of Facility Management Solutions, to Herbst, Nerdahl, and a third individual at JCI, Roy Cloudsdale, asking for information about the JCI/Clover contract relationship. Herbst sent the email to Nerdahl again in December 2002, to follow-up.

---

[5]        The motion to submit this declaration is granted.  (Docket Entry No. 117).

(Docket Entry No. 117, Ex. A).  The record shows that these two emails were sent at the suggestion of the Legal Department to gather information that could be used in negotiating with Clover to attempt to resolve the contract issues.  Although neither Herbst nor Nerdahl are attorneys, Herbst's supplemental declaration makes it clear that the email was the result of the suggestion of the Legal Department and intended to generate information to be provided to the Legal Department.

The other three documents, JCI-PR-11901, JCI-PR-11902, and JCI-PR-1903, (Docket Entry No. 117 at 1–2), are described as financial analyses performed to provide the Legal Department with the information it requested, so that the Legal Department could assist the business people in negotiating with Clover.  The evidence shows that these documents were communications made to "facilitate the rendition of legal advice to the client."  *Seibu Corp.*, 2002 WL 87461, at *3.  These documents are protected by attorney-client privilege.  The motion to compel is denied as to these documents.

## VI.    Conclusion

Clover's motion to compel is granted as to the Powerpoint and otherwise denied. (Docket Entry No. 102).

SIGNED on December 6, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge